[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
This is an appeal from the decision of the Planning and Zoning Commission of the Town of Bozrah ("Commission") approving defendants Lester Gorin ("Gorin") and Theodore Mercik's ("Mercik") application for site plan approval for a commercial development.
The underlying facts are not in dispute. Defendants Gorin and Mercik filed a site plan application (Return of Record, hereinafter "ROR", IG) with defendant Commission on or about December 1, 1989. (Gorin's Brief, p. 1). Defendants sought to develop 4.41 acres of land by converting an existing residential structure into a bank and by building a 9 store CT Page 8437 strip shopping center and a furniture showroom and warehouse. (Plaintiffs Brief, p. 3). Defendants Gorin and Mercik's plan would result in 3 separate and distinct structures. (ROR, IG, sheet 2 of 6). The subject property is located in the Town of Bozrah's Commercial Zone and within the Aquifer Protection Zone (Plaintiffs' Brief, p. 4, see also ROR ID, pp. 35-36).
On December 14, 1989 defendant Commission held its regularly scheduled meeting at which time defendants Gorin and Mercik's site plan was discussed. (Minutes of Bozrah Planning Zoning Commission, attached to Amended Answer and Return of Commission and labeled "IB"). Defendant Commission continued its discussion of the subject site plan at its next scheduled meeting, February 8, 1990. (ROR IB, minutes of meeting). Defendant Commission, at its February 8, 1990 meeting, voted unanimously to approve the subject site plan, with a condition (Id.). Defendant Commission's decision was published on February 13, 1990. (Plaintiffs' Brief, p. 1).
The court should note that on January 24, 1990 Mercik conveyed his interest in the subject property to Gorin. (Gorin's Brief, p. 2). The deed of the conveyance was recorded in the Bozrah Land Records January 25, 1990. (Id.).
Plaintiffs John and Olga Kuchy, husband and wife, filed this appeal in Superior Court on March 1, 1990 pursuant to General Statutes Section 8-8, as amended by ConnecticutPublic Acts No. 89-356, Section 1, contending that Commission exceeded its statutory authority and acted illegally, arbitrarily and in abuse of the discretion vested in it as follows:
a. The site plan includes a furniture warehouse, which is not a permitted use in the commercial zone, but is only permitted in the industrial zone;
b. The site plan includes a furniture showroom, which is not a permitted use in the commercial zone, but is only permitted in the industrial zone;
c. The site plan depicts 3 separate and detached structures on one lot, in violation of Sections 10.2 and 10.11.1 of the Bozrah Zoning Regulations;
d. The site plan depicts a drive-thru bank teller window and structure, which increases the nonconformity of the existing residential structure in violation of Section 15.2 of the Bozrah Zoning Regulations;
e. The site plan fails to depict adequate off-street parking to meet the requirements of Sections 14.1 and 14.2 of CT Page 8438 the Bozrah Zoning Regulations;
f. The parking lot configuration is overcrowded, lacks adequate access and egress and fails to meet the criteria of Section 14.1.2 of the Bozrah Zoning Regulations;
g. The site plan narrative states that 53 employees will occupy the site, with projected daily sewerage use of 1,590 gallons per day. With such a proposed use, the site plan fails to comply with Section 10.12 of the Bozrah Zoning Regulations which calls for specially designed septic systems in the acquifer protection zone;
h. The site plan fails to include a rendering of any proposed sign and its location, dimensions and means of illumination, in violation of Section 12.6.7 of the Bozrah Zoning Regulations;
i. The site plan fails to include a planting strip along the frontage of the site to a depth of not less than 20 feet in violation of Section 12.8.3 of the Bozrah Zoning Regulations;
j. The truck loading facilities for the proposed warehouse are not fully screened so as not to be visible from adjacent properties or public streets are not located in the rear or side of the warehouse in violation of Section 12.8.9 of the Bozrah Zoning Regulations;
k. Rather than ordering the applicants to comply with the aquifer protection regulations regarding septic disposal, the Commission attached an illegal condition to the site plan approval, which is vague, unenforceable, and not within the site plan requirements of the Bozrah Zoning Regulations;
l. The site plan makes no provision for the shielding of lighting so as not to adversely affect abutting property owners in violation of Section 12.8.11 of the Bozrah Zoning Regulations; and
m. The site plan does not meet the technical requirements for site plans as provided for in the Bozrah Zoning Regulations.
A hearing was held before the court (Hurley, J.) on August 6, 1991.
DISCUSSION A. Aggrievement CT Page 8439
General Statutes Section 8-8 allows aggrieved persons to appeal from decisions of zoning authorities to the Superior Court. General Statutes Section 8-8 (b) (Rev. to 1989, as amended by Connecticut Public Acts No. 89-356, Section 1 (1989)). "the appeal will be dismissed unless the appellant alleges and proves aggrievement." Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987). "Abutting landowners or landowners within one hundred feet of the land involved in any decision of the zoning board are considered automatically aggrieved. . . ." Id.
Plaintiffs allege in their complaint that they own land which abuts the subject property. Plaintiffs' deed to this abutting property was presented to the court at the administrative hearing. At that hearing, the court (Hurley, J.) found that plaintiffs were aggrieved.
B. Timeliness
A party taking an appeal must do so within fifteen days from the date that notice of the decision was published. General Statutes Section 8-8 (b) (Rev. to 1989, as amended). The appeal shall be commenced and returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court. Id. See also General Statutes Section 8-8 (e) (Rev. to 1989, as amended).
In this case, the Commission's decision was published February 13, 1990. See Plaintiffs' Brief, p. 1. The Commission was served through Bozrah Town Clerk Anna Mair and Commission Chairman on February 27, 1990. Defendants Gorin and Mercik were also served with process on February 27, 1990. This appeal is timely brought as to all defendants.
C. Scope of Judicial Review
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554,572-73 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily, or in abuse of its discretion. See Id., 573; Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 470 (1982). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989). Where the zoning authority has not provided the reasons for its decision, the court must review the record to determine whether the decision is supported thereby. A.P.W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 186 (1974). CT Page 8440
 The court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority. Reed v. Planning Zoning Commission, 208 Conn. 431, 440 (1988).
In this case, the Commission gave no reason or reasons for its decision. The court must therefore look to the record in order to determine whether the record supports the Commission's decision to approve defendants Gorin and Mercik's site plan.
D. Burden of Proof
The burden of proof to demonstrate that the Commission acted improperly is upon the plaintiffs. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988). Issues not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16
(1987).
Grounds "d" and "h" in plaintiffs' petition are not included in plaintiffs' brief. These two arguments are abandoned; id.; and therefore will not be discussed in this memorandum.
E. Use
Under the Town of Bozrah Zoning Regulations (ROR ID), "(e)xcept as otherwise provided in this section (section 10) only one principal building or use is permitted on one lot." (Id., Section 10.2). Plaintiffs argue that defendants Gorin and Mercik want to put in multiple buildings for multiple uses and that such action would violate the town's zoning regulations. Gorin argues that only one use is sought, because all buildings will be for a "commercial use." The Commission argues that multiple buildings are allowed on a single lot so long as they are under the same ownership.
The sections of the zoning regulations which address specific zoning districts set out specific uses permitted within those zones. See ROR ID Sections 5.1, 6.1, 7.1, 8.1, 9.1. It is submitted that in setting out the different and specific uses permitted in each zoning district, the regulations count each CT Page 8441 use separately, and do not lump all permitted uses together as a single use. Zoning Regulation Section 10.11.1 allows more than one use per lot "provided all such activities are conducted within a single structure. . .as in a shopping center" (ROR Id, Section 10.11.1). The proposed shopping center contains nine separate uses, and is not a single use. Further, the proposed site plan contains twelve distinct uses: bank, 9 stores, furniture showroom and furniture warehouse. Therefore defendant Gorin's argument that the proposed development is for a single use is without merit.
 "Lot" is defined in the Bozrah Zoning Regulations as (a) contiguous parcel of land defined by separate deed, or more than one such parcel jointly owned, and occupied or intended to be occupied by a single building or use and the buildings and uses accessory thereto In the case of. . .commercial (or) industrial. . .buildings, a group of buildings under the same ownership may be considered as occupying the same lot.
(ROR ID, Section 2.18). (emphasis added). The Commission is correct in saying that multiple buildings are allowed on a single lot. Notwithstanding Commission's argument, the definition of "lot" contemplates a principal building or use and accessory buildings or uses. To read the definition otherwise would make Section 10.2 meaningless.
 When two statutes relate to the same subject matter every effort should be made to find a reasonable field for the operation of both statutes. . .(and) where there is a reasonable field of operation for each statute which does not impinge on the domain of the other, it is the court's duty to give them concurrent effect.
Perille v. Raybestos-Manhattan-Europe, Inc., 196 Conn. 529,540-41 (1985) (citation omitted). The court will construe statutes, if possible, to avoid conflict between them. Berger v. Tonken, 192 Conn. 581, 590 (1984) (citations omitted). This standard also applies to town zoning regulations. See Planning Zoning Commission v. Gilbert, 208 Conn. 696, 705-06 (1988).
Giving effect to both zoning regulations Sections 2.18 and 10.2, Section 10.2 sets out the general rule of one principal building or use per lot, and Section 2.18 makes more explicit that rule by stating that a single building or use and the buildings and uses accessory thereto under the same CT Page 8442 ownership may be considered as occupying a single lot. Section 2.18 anticipates a situation where a single owner may hold deed to 2 or more contiguous parcels of land, which will be considered as 1 lot for the purposes of the Zoning Regulations.
In reading Sections 2.18 and 10.2 together, the Regulations do not allow more than one principal building or use per lot unless an exception is provided somewhere else in Section 10. Further, nowhere in the Regulations is an exception made allowing more than one principal building per lot.
Plaintiffs concede that because Mercik and Gorin each individually owned separate parcels of the property in question at the time of the Commission's decision to approve the site plan, it might reasonably read the Regulations as allowing 2 buildings on the subject property; one on the property then owned by Mercik, which contains the house proposed to be converted into a bank, and a new structure on the Gorin property.
The Commission acted illegally, arbitrarily and abused its discretion in approving a site plan which proposes to contain 3 buildings with independent uses. Therefore the plaintiffs' appeal is sustained on this basis alone. However, the court will also discuss the other claims.
F. Multiple Uses
 The Bozrah Zoning Regulations provide for multiple uses on a single lot as follows: The Commission may permit more than one (1) permitted non-residential use to be conducted on a single lot in a (Commercial) or (Industrial) District provided all such activities are conducted within a single structure or attached structures, as in a shopping center or office building, provided the lot and the buildings thereon remain in single ownership, and provided all other requirements for the zone are complied with.
(ROR ID, Section 10.11.1). Under Section 10.11.1, the proposed nine-store strip shopping center is a permitted use, provided all other requirements for the zone are complied with, because it is contained in a single structure. Under Section 10.11.1, the proposed furniture showroom and warehouse is also a permitted use, provided all other requirements for the zone are complied with, because it is contained in a single structure. However, Section 10.11.1 would not allow both the strip shopping center and the furniture showroom and warehouse. CT Page 8443
G. Furniture Showroom and Warehouse
"Zoning regulations that carve out districts must afford adequate information to enable one to determine the properties comprising each district and the uses permitted and prohibited therein." Planning Zoning Commission v. Gilbert,208 Conn. 696, 705 (1988).
Section 8 of the Bozrah Zoning Regulations sets out the 7 different types of uses permitted in a commercial zone. Included among the permitted uses are retail businesses (ROR ID, Section 8.1.1), and business services, such as banks. (Id., Section 8.1.2). Accessory buildings and uses are also permitted. (Id., Section 8.1.6).
Section 9 of the Bozrah Zoning Regulations sets out the uses permitted in industrial districts. Under Section 9, all uses permitted in Section 8.1 are also permitted in industrial districts, (Id., Section 9.1.1); along with major retail and wholesale businesses, showrooms and warehouses. (Id., Section 9.1.2).
Plaintiffs do not challenge the propriety of building the 9 store strip shopping center in a commercial district. Plaintiff argues that the proposed furniture showroom and furniture warehouse are not allowed in the subject site because (1) such uses come under the industrial zone uses rather than the commercial zone uses, and (2) a third structure is not allowed under Section 10.2 of the Zoning Regulations, which provide for one building or use per lot.
Gorin and Commission argue that the proposed furniture showroom is really a furniture store, which is properly allowed in a commercial zone, and that the court should not get bogged down in the game of semantics. Gorin further argues that the warehouse is an "accessory use" to the proposed furniture store, and therefore allowed under Section 8.1.6.
The differences between "retail businesses" (ROR ID, Section 8.1.1) and "major retail businesses" (Id., Section 9.1.1) is not set out in the Bozrah Zoning Regulations. The Zoning Regulations do not provide adequate information to enable one to determine whether a use is a "retail business" or a "major retail business." The Zoning Regulations do not define either use, see ROR Id, Section 2; or provide specifications for either use. See ROR ID, Sections 8.1, 9.1. Neither do the Zoning Regulations define or provide specifications for "furniture stores" or "showrooms." See ROR Id, Sections 8.1, 9.1. Whether the proposed furniture showroom is a retail CT Page 8444 or major retail business, store or showroom is a question of fact for the Commission to determine. There is nothing in the record to indicate that the Commission determined that the proposed furniture business is a store rather than a showroom. See ROR IB, IC. Nevertheless, in approving the building of the furniture selling establishment in a commercial zone, the Commission must have determined that it was a store rather than a showroom. It cannot be stated that this determination was unreasonable under the circumstances. Warehouses are explicitly allowed in industrial zones (ROR ID, Section 9.12), but not in commercial zones. See ROR ID, Section 8.1. To allow a warehouse in a commercial zone as an accessory use under Section 8.1.6 would defeat the clear language of the Zoning Regulations. Gorin's argument in support of such an interpretation of the Zoning Regulations is without merit. The Commission acted illegally, arbitrarily and in abuse of its discretion in approving the building of a warehouse on the subject property, which is located within a commercial zoning district.
H. Protection of Aquifer
a. Number of Employees
Under Section 10.12.8 of the Zoning Regulations, if conventional septic systems, such as the one proposed in the subject site plan application, See ROR IG, sheet 6 of 6; are used, the number of employees shall not exceed 12 per acre. The property in question is 4.41 acres which allows for 53 employees. (ROR IF, p. 3).
The total number of employees expected to be employed by the development is 58. (Id.). of these, 9 will work off site. (Id.). Gorin argues that it was within Commission's discretion to consider the number of employees actually expected to use the site when considering the employee to acreage ratio for the septic system. Plaintiffs argue that the Commission must use the figure for the total number of employees, and may not consider other factors.
Interpreting the regulations as pertaining to the number of employees actually using the site is not unreasonable. The Commission did not abuse its discretion when it approved the number of employees using the septic system.
b. Possibility of Pollution
Under Section 10.12 of the Bozrah Zoning Regulations "(n)o principal or accessory use will be permitted which could pose a threat to the quality of groundwater in CT Page 8445 acquifers identified and mapped by the U.S. Geological Survey." As a condition to its approval of the subject site plan, the Commission stated that "if there is any contamination from development, the developer will pay for Norwich water to be piped into the Kuchy's property." (ROR IB). There is nothing in the record to show that the development will not pollute the local aquifer. See ROR IG, IF. The Commission had no evidence or information on which to base its tacit decision that the aquifer protection regulations are being properly complied with Further, without evidence that the aquifer is protected, the condition attached to approval of the site plan is an improper stop gap measure in anticipation of the possibility of contamination of the aquifer by the proposed development in the future.
I. Miscellaneous Objection
a. Planting Strip
Bozrah Zoning Regulations require that "(a) planting strip along the frontage of the site shall be provided to a depth of not less than twenty (20) feet." (ROR ID, Section 12.8.3). Frontage is defined as the "continuous and contiguous length of the front line of the building lot abutting on a street." (ROR ID, Section 2.15). From the edge of the roadway to Gorin's property line, there is a strip of land approximately 35 feet wide which is owned by the State of Connecticut. (Gorin's Brief, p. 9). See also ROR IG, sheet 2 of 6 sheets.
Plaintiffs argue that the proposed planting strip does not conform to the Zoning Regulations because it is located wholly outside of the subject property's lot lines and within the 35 foot strip owned by the state.
It is found that the property does not have any "frontage" as defined in the Regulations. Further, the subject site plan does not have to comply with the planting strip requirement. Therefore, the plaintiffs' objection is without merit.
b. Loading Facilities
Bozrah Zoning Regulations require that all loading facilities shall be located at the rear or side of the proposed or existing buildings and shall be fully screened so as not to be visible from adjacent property or public streets. (ROR ID, Section 12.8.9). The loading docks for the proposed furniture warehouse are located on the left side of the building. (ROR IG, sheet 2 of 6). CT Page 8446
Plaintiffs argue that the loading facilities are not properly shielded from the road. Gorin argues that the loading docks are screened by the buildings, shrubs and landscaping from the road.
The site plans (ROR IG) show the loading facilities properly screened from the road in compliance with Section 12.8.9.
Plaintiffs' argument concerning the screening of the loading facilities is without merit.
c. Lighting
Bozrah Zoning Regulations require that any outdoor lighting be properly shielded so that such lighting will not adversely affect any abutting property or traffic on a public street in an unreasonable manner. (ROR ID, Section 12.8.11). Plaintiffs argue that no provision is made in the plans for the shielding of light so as not to adversely affect abutting property owners. Gorin argues that no lighting will adversely affect any abutting property.
The site plans (ROR IG) show "woods" on the border between the proposed development and the plaintiffs' property. The Commission might reasonably have found that such woods would act as an adequate shield between the properties. Therefore the Commission did not act arbitrarily or in abuse of its discretion in not denying approval on this basis.
d. Parking
Bozrah Zoning Regulations require off-street parking to be provided as follows: one space per 200 square feet of gross floor space in retail sales or financial establishments (ROR ID, Sections 14.2.2, 14.2.5); and, one space per employee in all other business establishments. (ROR ID, Section 14.2.6). Except for single family dwellings, parking spaces and access aisles shall be provided so that each parking space has adequate maneuvering area and unimpeded access to a street or highway. (Id., Section 4.1.2).
Plaintiffs argue that many of the proposed development's parking spaces violate Section 14.1.2 because the parking aisles abut the property boundary and have only a single way of entry and egress. Plaintiff also argues that because Commission and Gorin argue that the entire furniture facility is a furniture store, the Regulations provide for one parking space per 600 feet of gross floor area for furniture stores which the plan does not do. CT Page 8447
Gorin argues that the Commission is under no duty to adopt plaintiffs' interpretation of the parking space requirements of the Regulations. Gorin has not argued that the entire furniture facility is a furniture store. Rather, Gorin has argued that the warehouse is an accessory use to the furniture showroom, which he claims is actually a furniture store.
The Commission might reasonably find that the first phase of the development, consisting of the bank (855 sq. ft.), and 9 store strip shopping center (10, 101.32 sq. ft.), total 10,956.32 square feet and require 54.78 parking spaces. Site plan specifications provide for 73 spaces for phase one of the development. See ROR IG, p. 2 of 6. Nowhere in the Zoning Regulations regarding parking are furniture stores explicitly named and given separate parking space rules, as the plaintiffs' argument implies. See ROR ID, Section 14.2. Neither do the Regulations give parking space requirements "per 600 square feet" in any of its categories. See Id.
According to the site plan, the second phase of development, consisting of the furniture showroom (59,952 sq. ft.) and the furniture warehouse (26,642 sq. ft.) requires 114 spaces, for a total of 169 required parking spaces. The development proposes to build a total of 170 spaces. (ROR IG, p. 2 of 6). Nowhere in the record does Gorin support how he arrived at these calculations of the number of parking spaces required for the second phase of development.
The parties argue that the furniture sales building, whether characterized as a "showroom" or a "store", is a retail sales establishment and uses the one space per 200 square feet of gross floor space. See ROR ID, Section 14.1.2 In calculating required parking spaces, Gorin used the amount of space the building covered (19,984 sq. ft.), rather than the number of square feet contained on the total of the 3 floors contained in the building (59.952 sq. ft.). In doing so, Gorin misread the relevant statute, which requires one "space per 200 square feet of gross floor space in a retail sales establishment." (ROR ID, Section 14.2.2) (emphasis added). Under Gorin's interpretation, 99.92 spaces are required for the furniture store. Under the submitted interpretation, 299.76 spaces are required for the furniture store. Further, the Commission could not reasonably read the relevant Regulation except as requiring 299.76 parking spaces. To read the Regulation as pertaining to ground surface area covered rather than total floor area of a building would be unreasonable in determining the parking requirements of a multi-story building. CT Page 8448
Under Section 14.2.6, one parking space is required for each employee in business establishments not enumerated in other categories. (ROR ID, Section 14.2.6). The furniture warehouse falls into this catch-all category. The proposed furniture warehouse will employ 6 persons on site, plus another 9 who will work off site, parking their personal vehicles at the site, (ROR IF, p. 3); for a total of 15 employees. An additional 15 parking spaces are therefore required in addition to those already set out, for a total of 315 parking spaces for phase two of the development. (299.76 + 15).
The Commission acted arbitrarily and in abuse of its discretion in not requiring either more parking or reduced gross square footage of the subject development.
e. Driveway
Section 12.8.6 of the Bozrah Zoning Regulations provides that driveways "shall be thirty (30) feet wide for two-way traffic." (ROR ID, Section 12.8.6). The driveway depicted in the site plan is one hundred and ten feet (110') wide at the road frontage. (ROR IG, p. 2 of 6).
Plaintiffs argue that the proposed driveway does not conform to the Bozrah Zoning Regulations. Gorin argues that the Regulations do not specify that driveways cannot be more than 30 feet wide and that for safety reasons, 110 feet is better than 30 feet. Commission argues that Section 12.8.6 should be read as establishing minimum driveway widths and that wider driveways are not precluded.
 The use of "shall" and "may" which are words commonly mandatory and directory in connotation, is a factor that evidences affirmative selectivity of terms with specific intent to be distinctive in meaning. They must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meaning.
Farricielli v. Personnel Appeal Board, 186 Conn. 198, 203 (1982) (citations omitted). Thus, the words "shall" and "may" should be interpreted according to their plain and ordinary meaning. General Statutes Section 1.1. Id.
 Although the position of the municipal land use agency is entitled to some deference, the interpretation of provisions in the CT Page 8449 ordinance is nevertheless a question of law for the court. The court is not bound by the legal interpretation of the ordinance by the town. Rather, the court determines legislative intent from the language used in the regulations.
Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640
(1990) (citations omitted). "The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." Id., citing Schwartz v. Planning Zoning Commission, 208 Conn. 146, 153
(1988).
If the regulation meant that driveways shall be a minimum of 30 feet wide, it could be easily have said so. Further, the intent of the regulations, as revealed by its language, is to set a specific driveway width. The proposed driveway does not comply with the Bozrah Zoning Regulations
CONCLUSION
The Commission acted illegally, arbitrarily and in abuse of its discretion in approving the subject site plan in the following respects:
(1) Under Section 10.2 of the Bozrah Zoning Regulations only one principal building or use is permitted on a lot. Commission violated this Regulation when it approved three independent and principal buildings on the site plan;
(2) Warehouses, explicitly regulated under Section 9, Industrial Districts, cannot properly be put in a commercial district as an accessory use;
(3) The condition attached to approval of the development which makes provision for the future pollution of plaintiffs' property is an abuse of the Commission's discretion as there is no evidence in the record whatsoever that the acquifer has been adequately protected;
(4) The parking provided is grossly inadequate and not in conformity with the parking space requirements of Section 14 of the Zoning Regulations;
(5) The proposed driveway does not conform to the width requirements of Section 12.8.6 of the Zoning Regulations.
Therefore the plaintiffs' appeal is hereby sustained. CT Page 8450
HURLEY, J.